UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES FREDRICK SANFORD,

        Plaintiff,                     Case No. 2:12-cv-426

v.                                          Honorable Robert Holmes Bell

DANIEL H. HEYNS,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Heyns, Woods, Unknown Party #1, and the Michigan Department of Corrections. The Court will serve the complaint against Defendants Mackie, Norton, and Winnicki.

**Discussion**

      I.        Factual allegations

Plaintiff James Frederick Sanford, a state prisoner currently confined at the Carson City Correctional Facility, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Daniel H. Heyns, the Michigan Department of Corrections (MDOC), Warden Jeffrey Woods, Deputy Warden Thomas Mackie, Resident Unit Manager Robert Norton, Librarian Amanda Winnicki, and Unknown Party #1 Health Unit Manager.

Plaintiff alleges that on July 25, 2012, while he was incarcerated at the Chippewa Correctional Facility (URF), his roommate made several threats against him and told him that he would have him killed. Plaintiff knew that his roommate was in a gang, so he left the room and informed Officer Koben of the threats. Officer Koben told Plaintiff to return to his room and he would talk to Plaintiff's roommate. When Plaintiff's roommate returned to the cell after talking with Officer Koben, he told Plaintiff that he had better move or he would have him "fucked up." Plaintiff again reported the incident to Officer Koben and took all of his property out of the room, refusing to return to the room because he was afraid for his life. Officer Koben told Plaintiff that Defendant Mackie was requiring him to write a misconduct on Plaintiff for disobeying a direct order. Plaintiff then went to the control center and the Lieutenant told Plaintiff to return to his cell, that he would be okay tonight, and that Plaintiff would be moved the next day. Plaintiff refused, stating that his roommate had threatened and assaulted him by pushing him into his wall locker.

On August 8, 2012, after being denied protection, Plaintiff was written another disobeying a direct order misconduct for refusing to return to the general population. Defendant Mackie stated that if Plaintiff continued to refuse orders to return to the general population, he would

have his staff write misconduct tickets until Plaintiff became a Level V prisoner, and then he would transfer Plaintiff to another facility. On August 27, 2012, Plaintiff was written another misconduct ticket by Defendant Mackie, for a total of three for refusing to go to the general population. During his hearing on this misconduct, the Hearing Officer asked Plaintiff if he had ever requested protection. Plaintiff replied that he had requested protection on July 25, 2012. The Hearing Officer told Plaintiff that he should file a grievance on this matter.

On September 4, 2012, Plaintiff filed a grievance against Thomas Mackie for the denial of protective custody. On September 6, 2012, Plaintiff was given a hearing and was forced to return to the general population. Plaintiff was going to refuse, but Assistant Resident Unit Supervisor McLeod asked Plaintiff if he would try being housed on the westside, so Plaintiff agreed to try it. When Plaintiff's property was returned to him after the move, his television, which cost $142.50, had water in it, and his watch, which was worth $18.00, was gone. In addition, staff took two bags of coffee from Plaintiff at a cost of $3.31 each. Plaintiff asserts that staff began to harass him after his move.

Plaintiff subsequently filed a lawsuit and states that Defendant Winnicki was aware of this fact because she read all of his legal papers. Defendant Winnicki called Deputy Warden Horton and had Plaintiff moved back to the eastside on October 2, 2012. Plaintiff was placed in a room with a "young kid," who told Plaintiff that he was in a gang and that he could not deal with a roommate who had a breathing machine because it would keep him up at night. Plaintiff immediately informed staff and was told by Officer Sanford to go in the room and "kick his ass." Plaintiff responded that he was not trying to stay in prison and Sanford said, "You know what the saying is, 'Fuck or Fight.'" Plaintiff stated that he was not "going out like that" and requested

protection. On October 3, 2012, Plaintiff's request was denied by Defendant Mackie and he received a fourth misconduct ticket for disobeying a direct order for refusing to go to the general population. Plaintiff then filed a grievance on Defendant Mackie for refusing to provide Plaintiff with protection.

On October 15, 2012, Plaintiff received another misconduct ticket for disobeying a direct order that was directed by Defendant Mackie. Defendant Norton refused to send Plaintiff's legal mail to the federal court, stating that he was sick of Plaintiff filing grievances and lawsuits. When Plaintiff told Defendant Norton that there was no charge listed on the misconduct report, Defendant Norton stated that he was going to have Plaintiff sent to level IV. Later that day, Resident Unit Officer Hazett came to Plaintiff's cell and told him that Defendant Norton wanted him moved because he was sick of looking at Plaintiff's face. Plaintiff was then moved from Quarry Unit, which is for prisoners with medical needs like Plaintiff, to Steamboat Unit, which does not have 24 hour power. Plaintiff states that he requires 24 hour power for his CPAP machine. Plaintiff states that staff went through all his property and destroyed several of Plaintiff's legal papers by putting cocoa butter cream all over them. Plaintiff requested the remainder of his legal property, but Officer Peterson refused his request, stating that he was following instructions from Defendant Norton. Plaintiff was also placed on paper restriction.

On October 17, 2012, Plaintiff requested paper from Defendant McLeod, stating that he wanted to file a lawsuit. Officer Peterson subsequently came and got Plaintiff and took him to his property. Plaintiff gave Officer Peterson the property he wished to take to his cell, and Officer Peterson told Plaintiff that pursuant to the instructions of Defendant Norton, he would have to go through everything before Plaintiff could have it in his cell. Plaintiff then watched while Officer Peterson and Defendant Norton took several legal papers from his property prior to giving them to

Plaintiff at his cell. Plaintiff claims that for a period of time after he moved to Steamboat Unit, staff ran two extension cords into his cell to power his CPAP machine, but that they no longer do so because of fire safety issues. Plaintiff is now forced to stay up all night so that he will have power to sleep during the day.

Plaintiff claims that he is indigent and is entitled to 10 free first class letters each month. The accounting department keeps putting non-sufficient funds on Plaintiff's mail, so the mail room opens it and reads it. Plaintiff sent 10 letters out on August 13, 2012, and never got them back. Plaintiff states that no one knows what happened to the mail and he believes that staff are purposely interfering with it so that it won't get out.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially the court notes that Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh

Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. Mar. 12, 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

In addition, liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some

Case 2:12-cv-00426-RHB-TPG Doc #7 Filed 07/12/13 Page 8 of 9 Page ID#50

other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Heyns, Woods, and Unknown Party #1 were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Heyns, Woods, and Unknown Party #1 had in this action involve the denial of administrative grievances or the failure to act. Defendants Heyns, Woods, and Unknown Party #1 cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Heyns, Woods, and Unknown Party #1 are properly dismissed for lack of personal involvement.

The court concludes that Plaintiff's First and Eighth Amendment claims against Defendants Mackie, Norton, and Winnicki are not clearly frivolous and may not be dismissed on initial screening.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Heyns, Woods, Unknown Party #1, and the Michigan Department of Corrections will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Mackie, Norton and Winnicki.

An Order consistent with this Opinion will be entered.


Dated: July 12, 2013　　　　　　　　　　　　　　/s/ Robert Holmes Bell
　　　　　　　　　　　　　　　　　　　　　　　ROBERT HOLMES BELL
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE